RENDERED: JULY 10, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-1137-MR

THOMAS MILLER AND WANDA
MILLER                                                                                    APPELLANTS

v.                      APPEAL FROM FAYETTE CIRCUIT COURT
                        HONORABLE DIANE MINNIFIELD, JUDGE
                        ACTION NO. 24-CI-01624

UNIVERSITY OF KENTUCKY
MEDICAL CENTER; DR. JITESH A.
PATEL; AND DR. VASHISHT
MADABHUSHI                                                                               APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  EASTON, A. JONES, AND MOYNAHAN, JUDGES.

JONES, A., JUDGE:  Thomas Miller and Wanda Miller (collectively, "the

Millers") appeal from orders of the Fayette Circuit Court dismissing their medical

negligence and loss of consortium claims against the University of Kentucky

Medical Center ("UKMC"), Dr. Jitesh Patel, and Dr. Vashisht Madabhushi

(collectively, "Appellees"). Although the Millers filed their complaint within the applicable one-year statute of limitations, the circuit court concluded that the action was not timely because the summonses initially issued on April 30, 2024, were not issued in good faith as required by CR[1] 3.01 and KRS[2] 413.250. Specifically, the circuit court found that the Millers failed to take any meaningful action toward service between the issuance of the summonses and the expiration of the statute of limitations; therefore, the action did not commence until a second set of summonses was issued after the limitations period had expired. The circuit court also dismissed the Millers' claims against UKMC on governmental-immunity grounds and denied the Millers' motion to amend their complaint.

Upon review, we conclude that the circuit court correctly determined that the Millers failed to commence this action within the applicable limitations period. We further conclude that the circuit court properly dismissed the claims against UKMC on the alternative basis that it was entitled to governmental immunity and did not abuse its discretion in denying the Millers' motion to amend their complaint. Accordingly, we affirm.

---

[1] Kentucky Rules of Civil Procedure.

[2] Kentucky Revised Statutes.

# I. BACKGROUND

On May 2, 2023, Thomas underwent surgery at UKMC to remove a tumor in his bowel. Dr. Patel and Dr. Madabhushi performed the surgery. During the procedure, Thomas's right ureter was completely severed. This injury was discovered on May 12, 2023, after Thomas experienced postoperative complications. The parties agree that May 12, 2024, was the final day of the applicable statute of limitations for a medical negligence claim. KRS 413.140(1)(e) & (2).

On April 30, 2024, the Millers filed a complaint in the Fayette Circuit Court asserting medical negligence and loss-of-consortium claims against UKMC, Dr. Patel, Dr. Madabhushi, and unknown defendants. On the same day, the circuit court clerk issued summonses for the named defendants and returned them to the Millers' counsel pursuant to CR 4.01(1)(c).

The Millers' counsel did not attempt to serve any of the Appellees before the statute of limitations expired on May 12, 2024. Rather, her efforts were directed at securing waivers from the Appellees by contacting Brad Case, a local private attorney whom she knew had represented UKMC in other actions. On May 21, 2024, Attorney Case explicitly informed the Millers' counsel that he had not been engaged to represent UKMC in the Miller matter. Attorney Case

recommended that the Millers' counsel contact UKMC's risk management office directly.

Approximately forty-two days later, on July 2, 2024, the Millers' counsel had a second set of summonses issued. UKMC and Dr. Patel were served by certified mail and received service on July 8, 2024. Shortly thereafter, UKMC and Dr. Patel moved to dismiss the complaint, arguing that the action had not been timely commenced within the statute of limitations because the original summonses had not been issued in good faith for purposes of CR 3.01 and KRS 413.250.

By order entered August 30, 2024, the circuit court dismissed the claims against UKMC and Dr. Patel. The circuit court concluded that the Millers had failed to demonstrate a good-faith intention to have the April 30, 2024, summonses served presently or in due course, and that the action was therefore not commenced until the second summonses were issued after the statute of limitations had expired. The circuit court further concluded that UKMC was entitled to governmental immunity.

Dr. Madabhushi was served on May 13, 2025, through Kentucky's long-arm statute after he had relocated outside Kentucky. He likewise moved to dismiss on statute-of-limitations grounds. The Millers subsequently moved the

circuit court to reconsider its prior rulings and also sought leave to file an amended complaint.

Following a hearing, the circuit court entered an order on August 14, 2025, denying the Millers' motion to amend, denying their request for reconsideration, and dismissing the claims against Dr. Madabhushi. This appeal followed.[3]

## II. ANALYSIS

### A. The Millers Failed To Timely Commence Their Action.

"[W]here the pertinent facts are not in dispute, the validity of the defense of the statute of limitations can and should be determined by the court as a matter of law." *Smith v. Fletcher*, 613 S.W.3d 18, 24 (Ky. 2020) (quoting *Emberton v. GMRI, Inc.*, 299 S.W.3d 565, 572–73 (Ky. 2009)). In this case, "there is no dispute concerning the operative facts concerning the time elements involved." *Louisville Trust Co. v. Johns–Manville Prods. Corp.*, 580 S.W.2d 497, 501 (Ky. 1979). Therefore, our review is of a question of law, and we review questions of law *de novo*. *Community Financial Servs. Bank v. Stamper*, 586 S.W.3d 737, 741 (Ky. 2019).

---

[3] The Millers indicated they seek review of the circuit court's orders denying their CR 59.05 motions to alter, amend, or vacate, as well as the underlying orders of dismissal. "Our case law is clear, however, that there is no appeal from the denial of a CR 59.05 motion. The denial does not alter the judgment. Accordingly, the appeal is from the underlying judgment, not the denial of the CR 59.05 motion." *Ford v. Ford*, 578 S.W.3d 356, 366 (Ky. App. 2019).

A civil action is commenced by "the filing of a complaint with the court and the issuance of a summons or warning order thereon in good faith." CR 3.01. Similar language appears in KRS 413.250, which provides that an action is commenced for statute-of-limitations purposes when the first summons or process is issued in good faith from a court having jurisdiction of the cause of action. "This means that the summons must be issued with a good faith intention that it be served presently or in due course." *Browning Mfg. Div. v. Paulus*, 539 S.W.2d 296, 298 (Ky. 1976); *Asher v. Bishop*, 482 S.W.2d 769, 770 (Ky. 1972) ("A civil action is begun by the filing of a complaint and the issuance of a summons or warning order in good faith, CR 3, and not by the actual service of process.").

"The taking out of summons is presumptive evidence of an intention to have it served in due course, but that presumption may be rebutted by the facts." *Louisville & N.R. Co. v. Little*, 95 S.W.2d 253, 255 (Ky. 1936). "The issuance of a summons does not commence an action unless accompanied by an intent that the summons be served in due course." *Whittinghill v. Smith*, 562 S.W.2d 649, 650 (Ky. App. 1977). "In other words, causing a summons to be issued by the clerk conditionally is not causing it to be issued in good faith." *Little*, 95 S.W.2d at 255. "Action and intention combined constitute[] the commencement of the suit, because a summons filled out and signed with no intention of having it served is

altogether inoperative." *Id.* There must be some good-faith intentional action directed at attending to service. *Id.*

That action, however, does not have to be perfect. *Roehrig v. Merchants & Businessmen's Mut. Ins. Co.*, 391 S.W.2d 369, 370 (Ky. 1965). For example, serving the wrong person or attempting to serve the right person at the wrong address has been held sufficient. *Id.*; *Hausman's Adm'r v. Poehlman*, 236 S.W.2d 259, 260 (Ky. 1951); *Jones v. Baptist Healthcare System, Inc.*, 964 S.W.2d 805, 808 (Ky. App. 1997); *Arlinghaus Builders, Inc. v. Kentucky Public Service Comm'n*, 142 S.W.3d 693, 697 (Ky. App. 2003).

In contrast, an attorney who does nothing to move service forward until after the statute of limitations has expired will not be deemed to have exercised good-faith action. *Brock v. Turner Fuel Co.*, 178 S.W.2d 427, 429 (Ky. 1944). For example, in *Hearn v. Family Dollar Holdings, Inc.*, 519 S.W.3d 785, 787 (Ky. App. 2017), we held that the appellant did not demonstrate good faith in holding the summons pending the outcome of settlement discussions. *See also Gibson v. EPI Corp.*, 940 S.W.2d 912, 913 (Ky. App. 1997); *Whittinghill*, 562 S.W.2d at 650.

In this case, we begin by presuming that the Millers' act of having the summonses issued on April 30, 2024, is evidence of their good-faith intention to serve them in due course. Because subjective intent is nearly impossible to prove

or disprove, we look for some intentional action taken toward advancing service. The only action the Millers identify is counsel's communications with Attorney Case regarding whether UKMC would be willing to waive service on behalf of itself and the other named defendants.[4] They contend this is sufficient to establish good-faith action.

The Kentucky Supreme Court considered a nearly identical argument in *Isaacs v. Caldwell*, 530 S.W.3d 449 (Ky. 2017). In that case, the plaintiffs had until July 16, 2012, to initiate an original action in circuit court seeking review of a county planning commission's approval of a plat amendment. A local bank was a necessary party, and on the final day of the limitations period the plaintiffs filed their complaint and directed the clerk to return a summons for the bank to counsel pursuant to CR 4.01(1)(c).[5] Over the next several days, counsel unsuccessfully attempted to secure the bank's waiver of service and later argued that those efforts demonstrated good faith. The Supreme Court disagreed, holding that it would not "equate the effort to secure the waiver of service with a good faith effort to have the summons served." *Isaacs*, 530 S.W.3d at 456. The Court further noted that after the bank declined to waive service, counsel took no additional action for

---

[4] We express no opinion regarding whether UKMC had the authority to do so.

[5] The on-duty deputy clerk improperly refused to issue the summons without an address, but another deputy clerk did so the next day. Concluding that the first deputy clerk had no authority to refuse issuance of the summons, the Court deemed it issued on the same day the complaint was filed. *Id.* at 456.

approximately three weeks before engaging a constable to serve the complaint. *Id.* at 456.

The Millers assert that *Isaacs* is distinguishable because it involved an administrative appeal rather than a medical negligence action. We disagree. Pursuant to KRS 23A.010(4), an appeal to the circuit court from an administrative agency is not a true appeal but an original action. The Supreme Court construed that statute "as a legislative directive that the judicial review of administrative actions shall be governed by the same procedural rules of the courts applicable to original actions." *Isaacs*, 530 S.W.3d at 454; *see also Commonwealth, Transportation Cabinet, Department of Highways v. City of Campbellsville*, 740 S.W.2d 162, 164 (Ky. App. 1987). Accordingly, the Court's analysis of CR 3.01, CR 4.01, and KRS 413.250 applies equally here.

Likewise, we are unpersuaded by the Millers' attempt to distinguish *Isaacs* on its facts. In both cases, counsel directed the clerk to return the summonses pursuant to CR 4.01(1)(c) and then sought to secure a waiver of service rather than immediately proceeding with service of process. In both cases, counsel argued that those efforts demonstrated the requisite good-faith intent to serve the summonses in due course. And in both cases, service was not promptly pursued after those efforts proved unsuccessful. As the Supreme Court explained in *Isaacs*, an effort to secure a waiver of service is not the equivalent of an effort to

have a summons served. 530 S.W.3d at 456. Under that reasoning, communications between the Millers' counsel and Attorney Case, standing alone, do not establish the good-faith action necessary to commence an action.

The Millers rely on *Halderman v. Sanderson Forklifts Co., Ltd.*, 818 S.W.2d 270 (Ky. App. 1991), for the proposition that service need not be completed before the statute of limitations expires. That proposition is correct. However, as discussed above, for an action to be properly commenced within the statute of limitations, the summons must still be issued in good faith before the limitations period expires. In *Halderman*, the summons was issued and placed in the mail for service before the statute of limitations ran. *Id*. at 272. Such conduct plainly demonstrates an intent to advance service. Here, by contrast, the Millers took no comparable action directed toward effecting service until after the second set of summonses was issued in July 2024, well past the date the statute of limitations expired.

Appellants also assert that by accepting service of process Appellees waived any objection regarding the timeliness of service. There is no such rule. It is the filing of an answer, not the acceptance of service, that waives objections related to the issuance of process. *Young v. Harris*, 467 S.W.2d 588, 590 (Ky. 1971) ("[T]he filing of an answer waives the right to object to the late issuance of

-10-

process."). Here, Appellees did not file answers. Rather, they filed motions to dismiss pursuant to CR 12.02. Accordingly, no waiver occurred.

Under the circumstances presented, the circuit court correctly concluded that the presumption arising from the issuance of the April 30, 2024 summonses was rebutted. Because the summonses were not issued with the good-faith intention that they be served presently or in due course, the action was not commenced within the applicable statute of limitations. The circuit court therefore properly dismissed the Millers' claims as untimely.

**B. Dismissal of the Millers' Claims Against UKMC on Immunity Grounds**.

UKMC first argues that the Millers failed to preserve their challenge to sovereign/governmental immunity[6] because they did not provide notice to the Attorney General pursuant to KRS 418.075(1) and CR 24.03. Both KRS 418.075 and CR 24.03 require notice to the Attorney General when a party challenges the constitutionality of a statute. "The language of the statute and rule evinces a strong public policy in favor of notification to the Attorney General whenever the constitutionality of a statute is placed in issue[.]" *Maney v. Mary Chiles Hosp.*, 785 S.W.2d 480, 481 (Ky. 1990).

---

[6] The Commonwealth's public universities are "independent agenc[ies] and instrumentalit[ies] of the Commonwealth," which are attached to the executive branch. *University of Kentucky v. Moore*, 599 S.W.3d 798, 809 (Ky. 2019). As such, they are more properly described as enjoying governmental, rather than sovereign immunity. *See id.* Accordingly, we refer to the immunity at issue as "governmental" rather than sovereign throughout this Opinion.

The University, however, has not identified any statute whose constitutionality the Millers seek to challenge. Rather, it contends that constitutional considerations are embedded within the Millers' challenge to *Withers v. University of Kentucky*, 939 S.W.2d 340 (Ky. 1997), *abrogated on other grounds as stated in Comair Inc. v. Lexington-Fayette Urban County Airport Corp.*, 295 S.W.3d 1 (Ky. 2007), and related cases. While the application of sovereign and governmental immunity may implicate constitutional principles, the Millers do not challenge the constitutionality of a statute. Indeed, "sovereign immunity arises from common law" rather than from any constitutional provision or statute. *Long v. Department of Revenue*, 718 S.W.3d 868, 883 (Ky. 2025). Governmental immunity, in turn, is "a policy-derived offshoot of sovereign immunity[.]" *Caneyville Volunteer Fire Dep't v. Green's Motorcycle Salvage, Inc.*, 286 S.W.3d 790, 801 (Ky. 2009). Accordingly, we reject the University's preservation argument and proceed to the merits.

The issue presented by the Millers is whether UKMC's healthcare operations should be regarded as proprietary in nature and therefore outside the protection of governmental immunity. That precise argument, however, was rejected by the Kentucky Supreme Court in *Withers*.

In *Withers*, a patient filed a medical negligence action against the University of Kentucky based upon the alleged negligence of physicians practicing

at the University hospital.  The plaintiffs argued, much as the Millers do here, that the University's operation of a hospital constituted a proprietary activity because it generated revenue and competed with private healthcare providers.  The Supreme Court rejected that contention, explaining:

> Appellants seek to avoid the blanket of immunity by reference to *Gross v. Kentucky Board of Managers*, 105 Ky. 840, 49 S.W. 458 (1899), a case from the last century which holds that not every corporation created by the state is entitled to sovereign immunity.  Gross was relied upon in *Kentucky Center for the Arts v. Berns*, Ky., 801 S.W.2d 327 (1991), in making a distinction between a governmental function and a proprietary function performed by an entity having governmental roots.  Relying on the "change in performance location" example found in *Berns*, 801 S.W.2d at 330-31, appellants contend that in a major aspect, the University of Kentucky Medical Center is nothing more than a hospital which is in full competition with and performs the same function as private hospitals.  As such, they argue that in this respect, the University should be stripped of its immunity.

> The answer to this contention is simple.  The operation of a hospital is essential to the teaching and research function of the medical school.  Medical school accreditation standards require comprehensive education and training and without a hospital, such would be impossible.  Medical students and those in allied health sciences must have access to a sufficient number of patients in a variety of settings to insure proper training in all areas of medicine.  Such is essential to the mandate of KRS 164.125(1)(c).

> Moreover, and even if we were so inclined, there would be no authority for a decision of this Court whereby we refused to accord an immune entity its protection under

-13-

> the law. Sovereign immunity is "deeply implanted in the law of the Commonwealth through Section 231 of the Kentucky Constitution." *Kestler v. Transit Authority of Northern Kentucky*, Ky., 758 S.W.2d 38 (1988). Once it has been determined that an entity is entitled to sovereign immunity, this Court has no right to merely refuse to apply it or abrogate the legal doctrine. *Fryman v. Harrison*, Ky., 896 S.W.2d 908 (1995); *Calvert Investments, Inc. v. Louisville & Jefferson Metropolitan Sewer District*, Ky., 805 S.W.2d 133 (1991).

*Withers*, 939 S.W.2d at 343-44 (footnote omitted). The Supreme Court further held that the University's procurement of liability insurance did not constitute a waiver of immunity. *Id.* at 344.

*Withers* is dispositive of the issue before us and remains binding precedent. SCR[7] 1.030(8)(a) provides that "[t]he Court of Appeals is bound by and shall follow applicable precedents established in the opinions of the Supreme Court and its predecessor court." Whatever merit the Millers believe their policy arguments may have, neither this Court nor the circuit court is free to disregard controlling Supreme Court authority. Accordingly, the circuit court properly dismissed the claims against UKMC on immunity grounds.

### C. Denial of the Millers' Motion for Leave to File an Amended Complaint.

As an initial matter, the Millers' appellate brief includes references to claims for lack of informed consent and assault. Those claims were not asserted in

---

[7] Kentucky Rules of Supreme Court.

-14-

either complaint, were not included in the proposed amended complaint, and were not presented to the circuit court as grounds for amendment. When an issue has not been addressed in the order on appeal, there is nothing for this Court to review. "Our jurisprudence will not permit an appellant to feed one kettle of fish to the trial judge and another to the appellate court." *Owens v. Commonwealth*, 512 S.W.3d 1, 15 (Ky. App. 2017). Because an appellant preserves for review only those issues fairly presented to the trial court, *id.*, we confine our review to the Millers' request to amend their complaint to assert claims for breach of contract and unjust enrichment.

A trial court's decision whether to grant leave to amend pursuant to CR 15.01 is reviewed for an abuse of discretion. *Laneve v. Standard Oil Co.*, 479 S.W.2d 6, 9 (Ky. 1972). Although leave to amend "shall be freely given when justice so requires," CR 15.01 has long been construed as vesting substantial discretion in the trial court. *Graves v. Winer*, 351 S.W.2d 193 (Ky. 1961). A trial court may properly deny leave to amend where the proposed amendment would be futile. "A trial court may deny the right to amend a pleading on the basis of 'the futility of the amendment itself,' which essentially equates to a failure to state a claim upon which relief could be granted." *Powers v. Kentucky Farm Bureau Mutual Insurance Co.*, 694 S.W.3d 361, 373 (Ky. 2024).

The circuit court concluded that the Millers' proposed breach-of-contract claims were futile because the documents upon which they relied—the Consent for Surgery and Consent for Treatment forms—were not contracts. In reaching that conclusion, the circuit court relied upon *Kovacs v. Freeman*, 957 S.W.2d 251 (Ky. 1997), in which our Supreme Court rejected the contention that a medical consent form constituted an enforceable contract.

"Not every agreement or understanding rises to the level of a legally enforceable contract." *Id.* at 254. A valid contract requires offer and acceptance, consideration, and sufficiently definite terms establishing the obligations of each party. *Energy Home, Div. of Southern Energy Homes, Inc. v. Peay*, 406 S.W.3d 828, 834 (Ky. 2013); *Kovacs*, 957 S.W.2d at 254. The consent forms at issue do not contain promises guaranteeing a particular medical result. Rather, they authorize treatment and acknowledge the risks associated with that treatment. As the circuit court correctly observed, they are consent documents, not contracts guaranteeing a particular outcome.

Moreover, even assuming the existence of an enforceable contract, the proposed amendment still fails to identify a cognizable breach. The essence of the Millers' claim is that the surgery was negligently performed. However, "No malpractice liability shall be imposed upon any health care provider on the basis of an alleged breach of any guaranty, warranty, contract or assurance of results to be

obtained from any procedure undertaken in the course of providing health care, unless such guaranty, warranty, contract or assurance is in writing and signed by the provider." KRS 304.40-300. The Millers have identified no written guaranty, warranty, or assurance of a particular surgical result signed by either physician. To the contrary, the consent documents warned Thomas of potential complications and risks associated with the procedure.

Nor have the Millers alleged damages recoverable under a contract theory. In *Barnett v. Mercy Health Partners-Lourdes, Inc.*, 233 S.W.3d 723 (Ky. App. 2007), this Court explained that the existence of a contract alone is insufficient; a plaintiff must also demonstrate a breach and resulting damages. *Id.* at 727-28. Wanda, Thomas's wife, signed the promise-to-pay document. The proposed amended complaint does not allege that Wanda personally paid any sums to Appellees or otherwise suffered contract damages distinct from the personal injuries allegedly sustained by Thomas. Instead, the damages sought are the same damages that form the basis of the underlying medical negligence claims.

The unjust-enrichment claim fares no better. Unjust enrichment is an equitable remedy designed to prevent one party from retaining a benefit inequitably conferred by another. The proposed amended complaint does not allege that Appellees received compensation for services they failed to provide. The surgery for which treatment was sought was performed. The Millers'

complaint is not that Appellees retained a benefit without providing medical services in return, but rather that those services were negligently performed. Kentucky law does not permit a plaintiff to transform an ordinary medical negligence claim into an unjust enrichment claim simply by recasting the allegations in equitable terms.

The proposed breach-of-contract and unjust-enrichment claims were not viable as a matter of law. Additionally, the circuit court was nonplussed with the Millers' eleventh-hour attempt to recast their medical malpractice claims after the action had essentially been dismissed. Based on the law and the procedural history, we cannot conclude that the circuit court abused its discretion in denying the Millers' motion to amend their complaint.

### III. CONCLUSION

For the foregoing reasons, the orders of the Fayette Circuit Court dismissing the Millers' claims and denying their motion for leave to amend are AFFIRMED.

ALL CONCUR.


BRIEFS FOR APPELLANTS:

Heidi Weatherly
Mount Vernon, Kentucky

BRIEF FOR APPELLEES:

Karen L. Keith
Virginia Leigh Schell
Louisville, Kentucky